Newman, J.
The provisions of the will of Thomas .Mills which are pertinent to the inquiry here are as follows:
Item 1. I give and bequeath to my son 'James during his natural life and to his heirs at his death one hundred and thirty acres of land with all the appurtenances thereunto belonging, towit: One hundred and ten acres of the west side of the southwest quarter of Section 23, Twp. 5, Range 8, also twenty acres of the same quarter section immediately north of the lands hereafter devised to Sibbia’s heirs, being the same farm as now held in his possession.
Item 2. I give and bequeath to my daughter Nancy during her natural life and to her heirs the farm on which I now live containing one hundred and thirty acres lying in Sections 16 and 22, T. 5, Range 8.
Item 3. I give and bequeath to my son John during his natural life and to his heirs the old home *116 farm in Sections twenty-three (23) and twenty-nine (29), T. 5, Range 8, and all my personal property not otherwise disposed of.
Item 4. I give and bequeath to my daughter Sibbia’s heirs the balance of the southwest quarter of Section 23, T. 5, Range 8.
Item 5. I bequeath out of my personal property to my son James three hundred and twenty dollars.
■ Item 6. I bequeath out of my personal property to my daughter Hannah five hundred and ninety-two dollars.
Item 7. I give and bequeath to my daughter Lettie $1,000 to be paid her in notes now held by me against her husband John Inlow.
Item 8. My daughter Nancy to have control of all my household property for her and John’s use so long as they may live together and in case of the death of either or if they should wish a division then be divided equally between them.
Item 9. My lands in the state of Kansas I give and bequeath equally to my son James and daughters, Sibbia heirs Hanna and Lettie.
The will was executed August 28, 1861. Nancy, the daughter, mentioned in Item 2, died January 31, 1864, and Lettie, the daughter mentioned in Item 7, died January 1, 1865. On October 26, 1865, Thomas Mills made a codicil to his will which contained, among others, the following provisions:
“Codicil No. 1.
“Witnesseth as follows.
“Whereas by the blessing of Almighty God my life and health of body and mind has been preserved whilst two of my children Nancy and Lettie both *117 .receiving legacies in my foregoing will dated August 28, 1861, have deceased, and other changes in my family seem to make this codicil and amendment to my before mentioned will necessary.
“First I devise that the wish or bequest of my daughter Nancy in regard to my household goods to Nancy Hess be complied with.
“Item 2d. That to said Nancy Hess I bequeath one-fifth of the farm formerly bequeathed to .my daughter Nancy by Item 2d of my will.
“Item 3d. That the .other four-fifths of said farm be divided equally between my children, James, Hanna, Sibbia, and John or their heirs having by deed dated October 6, 1865, given to my daughter Lettie heirs Wm. Thomas, Mary Lavinia, John Henry, and Martha Jane Inlow my Kansas .lands mentioned in Item 9th of my will in lieu of their interest in this last mentioned farm.”
The testator died December 18, 1865, and the will and codicil were probated in Clark county, Ohio, January 12, 1866. The “old home farm” devised in Item 3 of the will is the real estate of which partition was ordered in the proceeding below. John Mills, the son of the testator, mentioned in this item, was married to Clara J. Baird, April 15, 1869. He and his wife lived on this farm until his death which occurred February 20, 1915. The widow Clara J. Mills continued in the possession of it until her death which occurred March 5, 1916. No children were born of this marriage.
The claim of plaintiffs in error is that, under item 3 of the will, the real estate devised therein, at John’s death vested in his widow, Clara J. Mills, *118 as his sole heir. At common law one’s heirs are the persons who would inherit the real estate by right of blood, but' the statutes have enlarged the meaning of the word and it may include persons not of the blood of the intestate. Under the provisions of .Section 8574, General Code, an estate passes to and vests in the husband or wife, relict of the intestate, where there are no children or their legal representatives. Clara’J. Mills, therefore, in a technical sense, was the heir of her husband. If, therefore, the testator used the word “heirs” according to its strict technical import, the contention of plaintiffs in error is correct. But it was held in Jones v. Lloyd, 33 Ohio St., 572, and followed in Weston v. Weston, 38 Ohio St., 473, and Durfee v. MacNeil, 58 Ohio St., 238, that the term “heirs,” when used in a will is flexible, and should be so construed as to give effect to the manifest intention of the testator as ascertained by a due consideration of all the provisions of the will. As was said in the opinion in Durfee v. MacNeil, supra, it would be unprofitable to analyze, or even to cite, the numerous cases in which the term has been held to have been used in its general sense-to designate any one capable of inheriting*, or in its limited sense to designate children, as the testator’s intention may appear from the scheme and all the provisions of the will. We are called upon then to determine in what sense the word “heirs” was used in Item 3 of the will.
At the time the will of Thomas Mills was made, a daughter Sibbia was deceased, having left six children surviving her. Lettie, another daughter of *119 the testator, died after the will was made, leaving several children surviving her. James, a son, had children living. In the first item of the will the testator gives to his son James during his natural life and to his heirs certain real estate and describes it as being immediately north of the lands “hereafter devised to Sibbia’s heirs.” It is apparent that the testator in the use of the word “heirs” in this item had in mind the children of James and the children of Sibbia. The heirs who would take the estate after the death of^James were his children. In item 4 the testator again uses the expression “S-ibbia’s heirs,” which unquestionably had reference to the children of that deceased daughter. He makes a like reference in item 9. After the death of his daughters Nancy and Lettie the testator made a codicil and in item 3 thereof refers to the fact that he had deeded certain property to his “daughter Lettie heirs” and then names the children of Lettie, which indicates that the words heirs and children were in his mind synonymous. It is to be noted that in his codicil the testator states that owing to the death of two of his daughters “and other changes in my family” the making of a codicil became necessary, and, as has been suggested, this indicates that the mind of the testator was éxpressly directed to his family and that he was conserving his property to those of his own blood. We think the provisions of the will and codicil to which we have referred and the circumstances under which they were made show that the testator used the word “heirs” in a sense different from its strict technical import. The words *120 “children” and “heirs” were used by him as interchangeable terms. For want of children to take the real estate devised in item 3, the devise in remainder failed, and the estate reverted to the brothers and sisters of John Mills or their representatives as heirs of the testator Thomas Mills. In Bunnell v. Evans, 26 Ohio St., 409, it was held that where a testator made a devise to his son John “through his natural life and then to his heirs,” and in another part of the will used the word “heirs” in the sense of “children,” the son took a life estate only, with remainder to his children, or issue, and not to his heirs generally, and that upon his death without issue, the devise in remainder failed, and the estate reverted to the heirs of the testator.
Counsel for plaintiff in error insist that the case of Miller et al. v. Miller, 77 Ohio St., 643, affirming the judgment of the Circuit Court, 9 C. C., N. S., 242, supports their position and that it is decisive of the question presented here. In that case where a testator had devised a parcel of real estate to his son for life with remainder to his lawful heirs, and the son married after the death of the testator, the circuit court held that upon the death of the son the wife took as heir as there was nothing in the will which tended to show that the testator used the words “lawful heirs” in a sense different from their strict technical import. The judgment of the circuit court in the Miller case was affirmed by this court without opinion. There were but two questions presented in that case in the circuit court': “Was the term ‘lawful heirs’ in the will used in a technical sense?” and “Was the widow an heir?”
*121 In affirming the judgment of the circuit court, we may assume that this court answered these questions in the affirmative and subscribed to the view entertained by the circuit court. In the Miller case the testator had devised to a married son, Howard, a certain parcel of land during his life and at his death to his children. In another item of the will he devised to another married son, Richard, for his life and at his death to his children. In the provision of the will for construction by the court in that case the testator used this language: “I give and bequeath to Peter a parcel of land [describing it] during his life, and when he dies it is to go to his lawful heirs.” Peter was unmarried, but married after the death of the testator. As was held by the circuit court there was nothing in the will tending to show that the words “lawful heirs” in the item devising the property to the son Peter was used in the sense that the word “children” was used when the devises were made to the other sons. We do not think that the Miller case is in point here.
For the reasons we have given the court of appeals was correct in holding that the widow of John Mills had no interest whatever in the real estate in question, and her answer and cross-petition was therefore properly dismissed.

Judgment affirmed,.

Nichols, C. J., Wanamaker, Jones and Matthias, JJ., concur.
Johnson, J., not participating.